# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| MCAIRLAIDS, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| KIMBERLY-CLARK CORPORATION, KIMBERLY-CLARK WORLDWIDE, INC., AND KIMBERLY-CLARK GLOBAL SALES, LLC, | ) 7:12-CV-00578 |
| Defendants. | ) |

## ORDER

This matter is before the court on the Motion of Plaintiff McAirlaids, Inc. ("McAirlaids") to Compel Un-Redacted Copies of Defendants' Documents (Dkt. No. 44). A hearing was held, the issues have been briefed, and the documents were reviewed *in camera*. For the reasons set forth below, McAirlaids' motion is **DENIED**.

## I.

This is an action for federal trade dress infringement under Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and the common law, and for unfair competition and false designation of origin in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) and the common law. Compl. ¶ 1, Dkt. No. 1. Defendants Kimberly-Clark Corporation, Kimberly-Clark Worldwide, Inc. and Kimberly-Clark Global Sales, LLC (collectively, "Kimberly-Clark" or "K-C") filed a counterclaim seeking cancellation of the trademark at issue in the trade dress infringement action, U.S. Trademark Registration No. 4,104,123. The core issue of this action is

1

whether the embossing of certain material on bed mats affected the functionality of the product or violated the trade dress of the embossing pattern utilized by McAirlaids in its product.

The court has entered an agreed protective order governing the production of documents during discovery, which allowed the designation of documents as "Confidential Information," and "Confidential Attorney Eyes Only Information." Dkt. No. 22. The protective order also contained a provision allowing a producing party to "claw back" a document (or portion thereof) which inadvertently or unintentionally produced otherwise privileged information. K-C produced in discovery a seven page strategic memorandum titled "Intellectual Assets Strategy," prepared by a project leader employed by K-C, and disseminated to certain employees within the company ("the IAS document"). K-C marked the IAS document as "Confidential- Attorneys Eyes Only," and redacted two portions of the document as attorney-client privileged communications prior to producing it in discovery.

McAirlaids now seeks an unredacted version of the IAS document, claiming that the redactions do not rise to the level of attorney-client communications because the IAS document is a business document; the IAS document was not drafted by an attorney or conveyed to an attorney; and, the IAS document was not drafted for the purpose of obtaining or conveying legal advice. McAirlaids further argues that any privilege that applied to the IAS document was waived by the dissemination of the document to other K-C employees beyond a "need to know" basis.

At the hearing on this matter, the court ordered that K-C produce the unredacted IAS document for an *in camera* review, and present information with regard to whom the document was disseminated. K-C produced an unredacted copy of the document at issue for *in camera* review, as well as a Declaration by Jon Rooyakkers, the author of the document, claiming that

the redacted statements consisted of information provided either directly by K-C's legal counsel, or by Marci Ruman, the product technical leader, who obtained the information directly from legal counsel. Decl. Jon Rooyakkers, ¶ 8, Dkt. No. 61, Ex. B. Mr. Rooyakkers included the redacted information in the IAS document, which was treated as a confidential and highly sensitive business document. Decl. Jon Rooyakkers, ¶ 4, Dkt. No. 61, Ex. B. The IAS document was distributed within K-C to a "limited" number of people, including the Director of Research and Engineering, the Product Technical Leader, a Research and Engineering Specialist, a Patent Strategist, and a Research and Engineering Senior Manager. Decl. Jon Rooyakkers, ¶ 6, Dkt. No. 61, Ex. B.

Both parties filed briefs explaining their position with respect to the redactions. In its reply brief on the motion at issue, K-C asserted that there are additional statements in the IAS document that constitute attorney-client privileged information, which were inadvertently produced to McAirlaids without redaction. K-C now requests that the court order that McAirlaids return the current version of the IAS document to K-C so that it may redact the additional statements that fall within the attorney-client privilege.

**II.**

A proper analysis of privilege questions must begin with a determination of the applicable law. Federal Rule of Evidence 501 provides that, for claims and defenses for which federal law applies, federal common law governs a claim of privilege, unless the Constitution, federal statutory law, or the Federal Rules provide otherwise. Fed. R. Evid. 501. Conversely, when State law "supplies the rule of decision" for an element of a claim or defense, the privilege "shall be determined in accordance with State law." Id. Here, the claims McAirlaids asserts pose a federal question based on the Lanham Act, as well as supplemental state law claims. When

both federal and state substantive laws apply, "Rule 501 would seem to require that federal privilege law control the federal claims, and state privilege law control the supplemental state law claims." Cont'l Cas. Co. v. Under Armour, Inc., 537 F.Supp.2d 761, 767 n. 3 (D. Md. 2008). Yet, "the majority of courts …have held that federal privilege trumps state law, because were it otherwise, the jury would be faced with a hopelessly confusing task." Id. (collecting cases). Thus, federal privilege law applies to the privilege issues in this case.

The attorney-client privilege is the oldest privilege for confidential communications known to the common law. Upjohn Co. v. U.S., 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The purpose of the attorney-client privilege is to "promote broader public interests in the observance of law and administration of justice ... [t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Id. Where the attorney-client privilege applies, "it affords confidential communications between lawyer and client complete protection from disclosure." Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998). It applies to individuals and corporations, and to in-house and outside counsel. See Upjohn, at 394, 101 S.Ct. at 685. "Because the attorney-client privilege 'impedes the full and free discovery of the truth, it must be narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" Deel v. Bank of America, N.A., 227 F.R.D. 456, 457 - 458 (W.D.Va. 2005)(quoting In re Grand Jury Subpoena, 341 F.3d 331, 335 (4th Cir. 2003).

A party asserting that a communication is protected by the attorney-client privilege has the burden of showing that it applies. Deel, 227 F.R.D. at 458. (citing In re Grand Jury Subpoena, 341 F.3d 331, 336 (4th Cir. 2003). "'The proponent must establish not only that an

4

attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived. Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the privilege.'" Id. (quoting United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982).

The Fourth Circuit applies the "classic test" of the attorney-client privilege:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of a bar or court, or his subordinate and (b) in connection with this communication is acting in his capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purposes of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed (b) and not waived by the client.

United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982)(per curiam)(quoting United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358-59 (Mass. 1950).

It is well settled that a corporation may be a "client" with standing to assert the privilege. Upjohn, 449 U.S. at 394, 101 S.Ct. at 685. Thus, communications from K-C's legal counsel to its employees may fall within the privilege. However, the confidential communication "must be for the *primary* purpose of soliciting legal, rather than business, advice." Henson By and Through Mawyer v. Wyeth Laboratories, Inc., 118 F.R.D. 584, 587 (W.D.Va. 1987)(citing N.C. Elec. Membership Corp. v. Carolina Power, 110 F.R.D. 511, 514 (M.D.N.C. 1986)). "Courts should 'cautiously and narrowly' apply the privilege in cases involving corporate staff counsel 'lest the mere participation of an attorney be used to seal off disclosure.'" Adair v. EQT Production Co., 285 F.R.D. 376, 380 (W.D.Va. 2012)(citing ABB Kent–Taylor, Inc. v. Stallings and Co., Inc., 172 F.R.D. 53, 55 (W.D.N.Y. 1996). However, the mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client

5

privilege. Id. (citing Coleman v. Am. Broadcasting Cos., Inc., 106 F.R.D. 201, 206 (D.D.C. 1985).

Given this framework, I find that the redacted language of the IAS document is legal advice provided by legal counsel to the client, K-C. The redactions quote or summarize legal opinions with regard to trademark and patent issues relating to a product. These communications set forth the legal opinion of counsel, and the direction of counsel with regard to a course of action. As such, they are protected by the attorney-client privilege.

McAirlaids argues that because the IAS document is a "business" document, it cannot be shielded from disclosure based upon the attorney-client privilege. McAirlaids correctly asserts that the IAS document is, on the whole, a business document, written by a project leader for utilization by a project team. It is notable, however, that K-C does not claim that the entire IAS document is privileged; but rather, redacted only two select portions of the document. An otherwise privileged communication does not lose its privilege simply because it is included in a business document. ePlus Inc. v. Lawson Software, Inc., 280 F.R.D. 247, 254 (E.D.Va. 2012)(Attorney-client privilege protects privilege log entries that contain both business and legal advice.) See also Cuno, Inc. v. Pall Corp., 121 F.R.D. 198, 204 (E.D.N.Y. 1988)(Portions of business documents that set forth the legal opinion of counsel may be privileged).

McAirlaids further argues that even if the redacted statements were privileged, the privilege was waived because the IAS document was disseminated to K-C employees beyond a "need to know" basis. "A corporation does not waive its privilege when non-lawyer employees send or receive communications because corporate communications which are shared with those having ***need to know*** of the communications are confidential for purposes of the attorney-client

privilege." Deel, 227 F.R.D. at 460 (quoting Santrade, Ltd. v. General Elec. Co., 150 F.R.D. 539, 545 (E.D.N.C. 1993)(emphasis added); ePlus Inc., 280 F.R.D. at 252 -253.

In Deel, the Court held that the "need to know" test was satisfied when privileged communications were shared with team members, three corporate executives and an agent of the lawyer. 227 F.R.D. at 460. Conversely, in ePlus Inc., the court found that the privilege was waived where communications were sent to ten or more non-attorneys with no demonstration that it was disseminated on a need to know basis. 280 F.R.D. at 253. The ePlus court recognized that protected communications within a corporation retain their protection if the persons to whom the communications were made had a "need to know" the information. The Court held, however, that the "need to know" test was not satisfied where there was no information as to the role of the persons who received the communications, including whether they were employees of the company. Id.

K-C asserts that the IAS document was treated as a confidential and highly sensitive business document, that it was disseminated only within K-C, and that it was shared with a limited number of people with a need to know the information contained in the redacted sections. Decl. of Rooyakkers ¶¶ 4-7, Dkt. No. 61, Ex. B. Specifically, based upon Mr. Rooyakkers current recollection, the IAS document was shared with the Director of Research and Engineering, the Product Technical Leader, a Research and Engineering Specialist, a Patent Strategist and a Research and Engineering Senior Manager. Decl. of Rooyakkers ¶ 6, Dkt. No. 61, Ex. B. Based upon the declaration of Mr. Rooyakkers, I find that the IAS document was disseminated only to those K-C employees with a "need to know" the information, and thus that the privilege has not been waived.

**III.**

K-C also seeks to "claw back" additional portions of the IAS document, claiming that they are attorney-client privileged communications that were inadvertently produced.[1] Federal Rule of Evidence 502(b) governs the inadvertent production of privileged material, and provides that privileged information disclosed in a federal proceeding does not operate as a waiver if the disclosure is 1) inadvertent; 2) the holder of the privilege took reasonable steps to prevent disclosure; and 3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B). Fed. R. Evid. 502(b).

Additionally, Rule 502(d) states "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." Fed. R. Evid. 502(d). In this case, the court entered the parties' agreed Protective Order on February 26, 2013, which states:

> [t]he inadvertent or unintentional production of discovery which a party or non-party later claims should not have been produced because of a privilege…will not be deemed to waive any privileges…..[t]he return or destruction of any Inadvertently Produced Privileged Material shall not in any way preclude the receiving party(ies) from moving the Court for an order that: (i) the discovery was never privileged or otherwise immune from disclosure; or (ii) that any applicable privilege or immunity has been waived by some act other than an alleged waiver caused by the inadvertent or unintentional production.

Protective Order ¶ E, Dkt. No. 22. Thus, pursuant to the Protective Order, if the communications at issue are privileged and were inadvertently or unintentionally disclosed, their privilege is not waived.

As noted above, K-C has the burden of proving that the privilege applies. U.S. v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982). McAirlaids asserts that K-C is not entitled to "claw-back"

---

[1] The IAS document with the additional proposed redactions is attached as Exhibit C to K-C's reply brief (Dkt. No 61), which was filed under seal.

these statements because they are not attorney-client privileged and were not inadvertently produced. Upon review of the additional statements in dispute, and based upon the prior analysis of the redacted portions of this document, I find that the disclosed portions which K-C now seeks to protect are attorney-client communications summarizing legal opinions regarding trademark and patent issues with K-C's product. However, in light of the circumstances in this case, I find that their production was not "inadvertent or unintentional," and thus, any privilege that applied has been waived.

Several cases have recognized the scarcity of Fourth Circuit law defining the term "inadvertent." See ePlus, 280 F.R.D. at 254-55; Francisco v. Verizon, 756 F. Supp. 2d 705, 718-19 (E.D.Va. 2010). These cases rely upon the Black's Law Dictionary definition of "inadvertent," "[a]n accidental oversight; a result of carelessness," (Black's Law Dictionary, 774 (8th ed. 2004)), as well as an unpublished Fourth Circuit case discussing the term, McCafferty's Inc. v. Bank of Glen Burnie, MJG–96–3656, 1998 U.S. Dist. LEXIS 12861 (4th Cir. Apr. 23, 1998). ePlus, 280 F.R.D. at 254-55; Francisco, 756 F. Supp. 2d at 719. In McCafferty's, the Court explained:

> [A]n inadvertent waiver would occur when a document, which a party intended to maintain as confidential, was disclosed by accident such as a misaddressed communication to someone outside the privilege scope or the inadvertent inclusion of a privileged document with a group of nonprivileged documents being produced in discovery. In contrast, when a client makes a decision—albeit an unwise or even mistaken, decision—not to maintain confidentiality in a document, the privilege is lost due to an overall failure to maintain a confidence.

1998 U.S. Dist. LEXIS 12861 at *4-5.

In Francisco, the defendant reviewed the document at issue, marked it confidential, redacted certain portions, and produced it along with 170 additional pages of documents. After a more extensive investigation, the defendant realized that the notes were privileged and claimed

9

that the privilege was not waived by their inadvertent disclosure. The Court found that disclosure was not inadvertent and the privilege was waived because counsel for defendant had the opportunity to examine the document on three separate occasions, marked it confidential, redacted portions, and produced it without any assertion of privilege. 756 F. Supp. 2d at 719.

Likewise, in ePlus, the Court did not allow a party to "claw-back" privileged documents that had been stamped confidential and, in some cases, were partially redacted prior to their production. The Court noted that such documents were clearly reviewed before being produced; and thus, production of such documents could not have been inadvertent. The Court stated, "[t]he record shows that Lawson intentionally produced these documents after reviewing them, and then realized it had mistakenly produced them. However, the Protective Order does not cover "mistakes." 280 F.R.D. at 255.

Conversely, in King Pharmaceuticals, Inc. v. Purdue Pharma, L.P., 1:08CV00050, 2010 WL 2243872 (W.D.Va. June 2, 2010), the Court held that the fact that a document had been reviewed and partially redacted does not by itself prevent the disclosure from being inadvertent. King involved a patent dispute, where one party was attempting to "claw back" four pages of a document, produced along with "millions" of other documents exchanged in the case. Portions of the pages had been redacted prior to their production; and the producing party now sought to redact the pages in their entirety. The Court noted that the privileged nature of the four pages was not apparent solely on the words used, but was evident from the extrinsic evidence and context of the case. The Court stated, "the very limited disclosure here, in light of the volume of production, is evidence of the reasonable steps taken to prevent disclosure. Moreover, Purdue clearly acted promptly in taking reasonable steps to rectify the error. The fact that the document

had been reviewed and partially redacted does not by itself prevent the disclosure from being inadvertent." Id. at *2.

In this case, the IAS document was reviewed by counsel, stamped confidential and partially redacted prior to its production. K-C refers to its failure to redact the additional statements as a "clerical error," that occurred "in spite of diligent efforts to review the documents." Although this document was one of approximately four thousand exchanged in discovery, the document itself was not inadvertently or unintentionally produced. The IAS document was carefully considered by K-C, reviewed specifically for privilege, redacted, stamped confidential and produced. Contrary to King, the privileged nature of the statements at issue here was apparent from the face of the document. There are no facts indicating that the failure to redact these statements was anything other than an error or omission by K-C. Counsel's belated realization that additional statements within a redacted document are also privileged is akin to a mistake, rather than an inadvertent production. Under these circumstances, I cannot find the failure to redact additional portions of the document to be inadvertent or unintentional, and thus the privilege that applied to those additional statements was waived by their production.[2]

---

[2] K-C contends that McAirlaids did not properly respond to the notice of inadvertent disclosure under Rule 26(b)(5)(B) and under the Protective Order entered in this case because McAirlaids did not promptly return all copies of the IAS document. The Rule provides that "[a]fter being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has." Fed.R.Civ.P. 26(b)(5)(B). The Protective Order provides that "[i]f a party or non –party requests the return, pursuant to this paragraph, of any Inadvertently Produced Privileged Material, the receiving party(ies) shall not use or disclose, and shall immediately cease any prior use of, such materials and shall return to the party or non-party the Inadvertently Produced Privileged Material, or confirm that the Inadvertently Produced Privileged Material has been destroyed and in either case, destroy all copies thereof." Protective Order ¶ E (Dkt. No. 22). In light of my decision, it is not necessary for me to resolve this question.

## IV

For the foregoing reasons, McAirlaids' Motion to Compel Un-Redacted Copies of Defendants' Documents (Dkt. No. 44) is **DENIED**.  The Clerk is directed to provide a certified copy of this Order to all counsel of record.

Enter:  May 31, 2013

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge