# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |  |
|---|---|---|
| MCAIRLAIDS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:12-CV-00578 |
| | ) | |
| KIMBERLY-CLARK CORPORATION, | ) | |
| KIMBERLY-CLARK, | ) | |
| WORLDWIDE, INC, and | ) | |
| KIMBERLY-CLARK GLOBAL | ) | |
| SALES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

In this trade dress litigation, Defendants Kimberly-Clark Corporation, Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (collectively "Kimberly-Clark") ask the court to award attorneys' fees and tax costs following the District Court's dismissal of all claims on summary judgment. Plaintiff, McAirlaids, Inc. ("McAirlaids"), opposes the motion for attorneys' fees and the amount sought in taxed costs and further requests that the court stay any ruling on the cost issue pending the outcome of its appeal of the summary judgment decision to the Fourth Circuit. These matters were referred to me to prepare a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), and having considered the record, the legal arguments submitted and the applicable law, I **RECOMMEND** that Kimberly Clark's Motion for Attorneys' Fees (Dkt. No. 139) be **DENIED**, McAirlaids' Motion to Stay or Retax Costs (Dkt. No. 150) be **GRANTED** in part and **DENIED** in part, Kimberly-Clark's Bill of Costs be **GRANTED** in the amount of $14,551.79, and payment of the costs be **STAYED** pending final resolution of all appeals.

# I.     BACKGROUND

The facts of this case are fully set forth in the District Court's July 19, 2013 Memorandum Opinion and Order (Dkt. Nos. 120 & 121) granting Defendants' motion for summary judgment.  In brief, McAirlaids manufactures absorbent pads, which during the manufacturing process pass through rollers that imprint the surface of the product with offset rows of evenly spaced dots.  McAirlaids claimed that the embossing or imprinting of its absorbent pads is inherently distinctive and not a functional component of its product, and thus, McAirlaids sought and obtained federal trade-dress registration for the particular arrangement of dots on its absorbent pads.  Kimberly-Clark manufactures incontinence pads that are also imprinted with rows of dots, which McAirlaids claims infringe its registered trade dress. McAirlaids sued Kimberly-Clark in this court contending that Kimberly-Clark's use of the dot pattern on its incontinence pads constitutes trade dress infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), and Virginia common law.  The court dismissed McAirlaids' claims on summary judgment finding that the McAirlaids dot design served a functional purpose and could not be trade dress.  As such, the court canceled McAirlaids' trade-dress registration.

Kimberly-Clark now seeks over $1,000,000.00 in attorneys' fees and related expenses, arguing that the entire lawsuit was oppressive and thus "exceptional" under § 1117(a) of the Lanham Act, or alternatively, that it is entitled to recover attorneys' fees as sanctions under 28 U.S.C. § 1927 and Rule 37 of the Federal Rules of Civil Procedure.

## II. ATTORNEYS' FEES UNDER THE LANHAM ACT

The Lanham Act permits the court to award reasonable attorney fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a).  The statute does not define what constitutes an

"exceptional case," but the Fourth Circuit has held that an "exceptional case" is one in which "the defendant's conduct was malicious, fraudulent, willful or deliberate in nature." Retail Services Inc. v. Freebies Publ'g, 364 F.3d 535, 550 (4th Cir. 2004); People for the Ethical Treatment of Animals ("PETA") v. Doughney, 263 F.3d 359, 370 (4th Cir. 2001). The prevailing party must prove the exceptional nature of the case by clear and convincing evidence. Outsidewall Tire Litig., 748 F. Supp. 2d 557, 562 (E.D. Va. 2010)(citations omitted).

The Fourth Circuit established a dual standard to prove entitlement to attorneys' fees depending upon whether a plaintiff or defendant prevails in the underlying litigation. A prevailing plaintiff seeking attorney fees must demonstrate an exceptional case by showing that the defendant acted in bad faith. A prevailing defendant can satisfy its proof burden upon a showing of "something less than bad faith" by the plaintiff in bringing and prosecuting the action. Retail Services, Inc., 364 F.3d at 550.[1] Pertinent considerations for judging a plaintiff's conduct when the defendant prevails are "economic coercion, groundless arguments, and failure to cite controlling law." Id.(citing Ale House Mgmt. v. Raleigh Ale House, Inc., 205 F.3d 137, 144 (4th Cir. 2000)). Additional factors to be considered include the closeness of the case, tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fairer allocation of the burdens of litigation between the winner and loser. US Gates Intern., LLC v. Light Star Travel Agency, Inc., No. 1:10cv32, 2010 WL 5300822, at *1 (E.D. Va. Dec. 22, 2010). "Thus, the focus tends to be on the plaintiff's litigation conduct or pre-litigation assertion of rights." Retail Services, Inc., 364 F.3d at 550-51.

---

[1] The Fourth Circuit has noted that this double standard of proof may ultimately prove infirm under Fogerty v. Fantasy, Inc., 510 U.S. 517, 522-26, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994), which rejected a standard that differentiated between plaintiffs and defendants for the recovery of attorney fees in the copyright context. However, the dual standard has not been overruled, and is still being used in this Circuit. See PBM Products, LLC v. Mead Johnson & Co., No. 3:09-cv-269, 2010 WL 723739, at *7 n. 2 (E.D. Va. Mar. 2, 2010);US Gates Intern., LLC v. Light Star Travel Agency, Inc., No. 1:10cv32, 2010 WL 5300822, at *1 n. 2 (E.D. Va. Dec. 22, 2010). Kimberly-Clark has not met the lower threshold showing in this case; thus, the validity of the dual standard is not relevant here.

Awards of attorneys' fees under the Lanham Act are not made as a matter of course, but rather as a matter of the court's considered discretion. Ale House Mgmt, 205 F.3d at 144. As the Court noted in Retail Services, Inc., "[t]he question…is not whether snippets of the record or isolated arguments clearly lack merit." 364 F.3d at 551. Rather, the court must determine, in light of the entire case, whether plaintiff's claims and assertions were so lacking in merit that the action as a whole was "exceptional." Id. That is, the court must look at the case as a whole and the conduct and motivation of the plaintiff in its determination of whether this is an exceptional case sufficient to support an attorney fee award.

Kimberly-Clark asserts that this case qualifies for an award of attorneys' fees because (1) the suit was meritless and oppressive, (2) McAirlaids engaged in a "slash and burn" motions practice, and (3) McAirlaids pursued discovery that was irrelevant to the claims at issue. McAirlaids counters that this case is not exceptional for purposes of an award of attorney's fees because, (1) it presented substantial evidence in support of its claim, (2) it was obligated to enforce its federal trade dress registration or risk losing it, and (3) both parties engaged in extensive discovery on the issues relevant to the case.

## A. Meritless Claims

Under the Lanham Act, a court may award attorney's fees against a party which engages in conduct beyond litigating a plausible, although ultimately unavailing, legal claim. See, e.g., San Francisco Oven, LLC v. Fransmart, Inc., 222 F. App'x 235, 237, 2007 WL 737399 (4th Cir. 2007)(awarding attorneys' fees where the losing party brought a Lanham Act claim solely to avoid a dismissal for lack of subject matter jurisdiction and pursued the claim without any factual or legal support); Outsidewall Tire Litig., 2010 WL 4263395, at *4 (awarding attorneys' fees where the infringing party planned to continue infringing with impunity because the

prevailing party "would die or run out of money first"); <u>Flexible Benefits Council v. Feltman</u>, No. 1:08cv371, 2009 WL 1351653, at *4 (E.D. Va. May 14, 2009)(awarding attorneys' fees where a party admitted that they created an infringing website address with an intent to obtain the plaintiff's profits).

Kimberly-Clark argues that this case is exceptional because McAirlaids presented scant evidence in support of its claim, and continued to pursue the claim after McAirlaids' expert testified that the dots at issue were functional. Dkt. No. 158, pp. 8-9.  Reviewing the case as a whole, I find that McAirlaids litigated in good faith, and that while unsuccessful on the merits, its claims were not so lacking in merit that the action as a whole was "exceptional."

McAirlaids sued Kimberly-Clark armed with a federal trade-dress registration from the United States Patent and Trademark Office for the specific manner in which it imprinted the dots on its absorbent pads.  This trade dress registration constitutes "prima facie evidence" of non-functionality, and supports McAirlaids' good faith belief in the propriety of its lawsuit. 15 U.S.C. § 1057(b).  <u>See</u> <u>Retail Services, Inc.</u>, 364 F.3d at 542 ("Under the Lanham Act, the issuance of a certificate of registration arms the registrant with 'prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark.'" (citation omitted)).  Any failure by McAirlaids to protect its trademark against a purported infringer could be considered an "act of omission" under the Lanham Act and cause the trade dress to lose significance.  <u>Quality Inns, Int'l, Inc. v. McDonald's Corp.</u>, 695 F. Supp. 198, 214 (D. Md. 1988); <u>See also</u> <u>Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha</u>, 754 F.2d 591, 602 (5th Cir. 1985)("A trademark holder is required to police his mark; else, it may become generic, diluted, or otherwise lessened in value."). McAirlaids' ownership of a valid trade dress registration suggests, at a minimum,

that it had a colorable claim for trade dress infringement, and a legitimate basis for filing a claim under the Lanham Act.[2]

Contrary to Kimberly-Clark's assertion, this case is distinguishable from <u>Yankee Candle Co. v. Bridgewater Candle Co.</u>, where the court found that the plaintiff, Yankee Candle Co., presented "absolutely no evidence" in support of its theory that the overall look and feel of its candles was a protectable trademark. 140 F. Supp. 2d 111 (D. Mass. 2001)(abrogated on different legal grounds). In this case, McAirlaids obtained trade dress protection of its dot pattern, and thus protection of that trade dress was not frivolous on its face. Additionally, unlike the plaintiff in <u>Yankee Candle</u>, McAirlaids presented evidence in support of its theory through deposition testimony, declarations and expert reports. Dkt. No. 130. Although Kimberly-Clark asserted and the court ultimately found, that the evidence of functionality was compelling, "[a] court's rejection of [a] plaintiff's arguments does not automatically constitute an oppressive lawsuit which lacks merit." <u>Georgia-Pacific Consumer Products L.P. v. Kimberly-Clark Corp.</u>, No. 1:09-cv-02263, 2011 WL 3651304, at *2 (N.D. Ill. Aug. 15, 2011).

Likewise, the court's reliance upon the testimony of McAirlaids' expert, Dr. Murray, in its finding that the dots were functional, does not transform the claim into a malicious, fraudulent, or willfully meritless action. The court stated that the answer in this case was "straightforward;" however, it also acknowledged that the parties were "deeply at odds over the issue and have filed more than a thousand pages in support of their arguments." Dkt. No. 120, p. 4. It takes something more than pursuing a "straightforward" or "simple" case to merit an award of attorneys' fees under the Lanham Act.

---

[2] Kimberly-Clark correctly asserts that a federal trade dress registration does not vest the owner with *carte blanche* authority to sue a competitor. However, the cases cited by Kimberly-Clark where courts granted attorneys' fees under the Lanham Act against plaintiffs with valid trade dress registrations include additional facts making the cases "exceptional," such as fraud, which are not present here.

The other factors that courts are to consider in evaluating a prevailing defendant's fee petition, such as fraud, economic coercion, groundless arguments, and failure to cite controlling law, are not present here. There is no suggestion that McAirlaids obtained its trade dress registration improperly or through fraud or other failure to disclose full information about its product. Likewise, Kimberly-Clark is a large multi-national corporation and did not face serious economic coercion in defending this case.

The district court did not find that McAirlaids presented groundless claims or that it failed to support its position with legal authority. The decision to grant summary judgment did indeed rely upon the evidence in McAirlaids' filings to conclude that the dot design at issue is a "careful balance between strength, absorbency and manufacturing practicality." Nevertheless, the record showed that McAirlaids had a good faith belief that its dots were non-functional and presented evidence to support its position. While that evidence did not persuade the court, this case does not fall into out of the realm of "exceptional" cases that are malicious, fraudulent, or willfully meritless which merit an attorney fee award.

## B. Litigation Conduct

Kimberly-Clark also argues that attorneys' fees are warranted because McAirlaids engaged in oppressive and vexatious litigation conduct, a "slash and burn" motions practice, and took several depositions that were irrelevant to the issues before the court. Kimberly-Clark uses charged terms to describe McAirlaids' litigation conduct, including "scorched earth tactics," "needlessly aggressive manner," "oppressive motions practice," and "excessive and facially irrelevant discovery." Dkt. Nos. 156 & 158. The underlying conduct cited by Kimberly-Clark to support these allegations are: 1) multiple discovery motions filed by McAirlaids and later denied

or deemed moot by the court; and, 2) McAirlaids' pursuance of discovery relating to Kimberly-Clark's product.

Without doubt, this case involved an excessive amount of discovery motions, many of which were filed by McAirlaids and were ultimately denied or deemed moot by the court. Kimberly-Clark argues that McAirlaids filed the motions unnecessarily, without engaging in the required meet and confer process, and for the purpose of harassment. Conversely, McAirlaids asserts that such motions were necessitated by Kimberly-Clark's obstructionist behavior and belated representations that rendered many of the motions moot. It is impossible for the court to know which party was responsible for the overall difficulty in communication and cooperation in this case, and thus whether the discovery motions were filed out of necessity or to harass and complicate the lawsuit. Consequently, the volume and lack of success of McAirlaids' discovery motions, without more, does not constitute oppressive or vexatious litigation conduct. Indeed a review of the record shows that of the discovery motions brought before the court, many issues were resolved by agreement. Those decided by the court were resolved in favor of both sides.

Additionally, McAirlaids' motion practice, while zealous, did not rise to the level of oppressive or egregious harassment such that would justify an award of attorneys' fees. Discovery in this case was complex, involved the production of thousands of documents, and was strongly contested by both parties. Where "'both sides [are] equally litigious' and 'there [are] many hotly contested issues of great concern to each side,' an award of attorneys' fees is not justified 'to penalize by hindsight a party that pursued its position aggressively.'" Georgia-Pacific Consumer Products LP, 2011 WL 3651304, at *2 (citing Dorr–Oliver, Inc., v. Fluid Quip., Inc., 966 F. Supp. 718, 721-722 (N.D. Ill. 1997)). Kimberly-Clark is a large company and is well-versed in, and quite capable of, defending a complex and litigious intellectual property

case.  As the court stated in <u>Georgia-Pacific</u>, "[e]xtensive discovery, defending depositions, exchanging expert reports, and responding on the merits to motions are garden variety expenditures in [trademark infringement] cases." 2011 WL 3651304 at *3.

Kimberly-Clark also argues that all discovery propounded by McAirlaids relating to the manufacturing process of Kimberly-Clark's product (including multiple depositions of Kimberly-Clark employees) was irrelevant, unnecessary, and conducted to obtain facts to support McAirlaids' later-filed patent infringement case involving the same products and the use of dots in the manufacture of absorbent pads. Dkt. Nos. 156 & 158.  Kimberly-Clark further asserts that depositions taken by McAirlaids and not cited in either party's summary judgment brief are evidence of oppressive discovery practices.  McAirlaids argues that the discovery related to Kimberly-Clark's product was relevant to Kimberly-Clark's assertion in its counterclaim that the dots on its product are functional.  Dkt. Nos. 159 & 163-1.

Kimberly-Clark filed a counterclaim in this action stating that the dotted embossing on its bed mat product was functional.  In particular, Kimberly-Clark stated that testing on its product revealed that the dot pattern caused the product to be more than six times stronger than a diamond pattern. Dkt. No. 17 at 19.  Based upon these claims, the court allowed McAirlaids to conduct discovery regarding the manufacturing process of Kimberly-Clark's product, and the basis for Kimberly-Clark's contention that the dots were functional. Dkt. No. 28.   Further, the court allowed McAirlaids to conduct depositions of Kimberly-Clark employees with regard to the manufacturing process and testing of Kimberly-Clark's product.  Dkt. No. 48, p. 2.

Under the Federal Rules of Civil Procedure, parties may obtain discovery that "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1). Although both parties agree that the functionality of McAirlaids' product was the primary focus

of the case for purposes of summary judgment, Kimberly-Clark admits that the functionality of its product was also relevant, although minimally so. Dkt. No. 156, p. 12. Thus, pursuant to the Federal Rules and this court's previous rulings, McAirlaids was entitled to conduct discovery to investigate Kimberly-Clark's claim regarding the functionality of dots on its product.

Further the fact that certain depositions or discovery responses were not cited or relied upon in McAirlaids' summary judgment filings does not transform them into oppressive discovery tactics. A party is not required to use the fruit of all the discovery it propounds, nor should it be punished for taking advantage of discovery permitted under the Federal Rules. It is the very purpose of discovery to allow a party to investigate information that may be relevant.

Proof that a case is exceptional for purposes of an attorneys' fee award requires more than prevailing. Here the parties had starkly opposite positions. Pursuing or protecting one's legal rights, as both sides did here, does not leave the losing party as having acted in less than good faith. Consequently, based upon the totality of the circumstances, I conclude that this case is not exceptional, and does not warrant an award of attorneys' fees under the Lanham Act.

### III. ATTORNEYS' FEES UNDER 28 U.S.C. § 1927 AND RULE 37

Kimberly-Clark also requests an award of attorneys' fees under 28 U.S.C. § 1927 or under Rule 37 of the Federal Rules of Civil Procedure for the fees it incurred relating to five "frivolous" discovery motions filed by McAirlaids, and five "unnecessary and irrelevant" depositions taken by McAirlaids of Kimberly-Clark employees.

Section 1927 permits the court to award attorneys fees against an attorney who multiplies litigation "unreasonably or vexatiously." Specifically, § 1927 states,

> An attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  A party seeking an award of fees under § 1927 must show that the manner in which the attorney handled the case rose to the level of bad faith.  <u>EEOC v. Great Steaks, Inc.</u>, 667 F.3d 510, 522-23 (4th Cir. 2012); <u>Global Hub Logistics v. Tamerlane Global Services, Inc.</u>, No. 1:12-cv-1350, 2013 WL 1332048, at *4 (E.D. Va. Mar. 29, 2013).  Having previously found that McAirlaids' litigation conduct did not meet the "something less than bad faith" standard imposed by the Lanham Act, it necessarily follows that it does not meet the higher bad faith requirement of § 1927.

Kimberly-Clark also moves for sanctions against McAirlaids under Rule 37.  Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure provides that when a discovery motion is denied the court must "require the movant…to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." However, Rule 37 further states, "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust."  As stated above, it is unclear to the court which party's conduct created the need for the multiple discovery motions filed by McAirlaids.  The court has considered each of the discovery motions filed and reviewed its orders in each motion.  The court granted some relief to both sides during the discovery process.  These motions and the court's orders reflect nothing more than the fact that the parties engaged in a strongly contested legal dispute with the attorneys acting in good faith to protect their clients' legal rights and interests.  Consequently, I do not find an award of sanctions under Rule 37 appropriate in this case.

# IV.    TAXATION OF COSTS

## A.  Background

On August 2, 2013, Kimberly-Clark filed a Bill of Costs with the court with the appropriate affidavits attached, requesting that the Clerk tax costs in the amount of $24,183.99. Dkt. No. 138.  On August 16, 2013, McAirlaids filed a Notice of Appeal with the United States Court of Appeals for the Fourth Circuit. Dkt. No. 144.  That same day, the Clerk taxed costs against McAirlaids in the amount of $24,183.99 (Dkt. No. 145), and McAirlaids filed Objections to Kimberly-Clark's Bill of Costs (Dkt. No. 146), requesting that the bill of costs be stayed pending appeal, or alternatively, that the requested costs be either denied in their entirety or substantially reduced.  On August 23, 2013, McAirlaids filed a Motion to Stay or Retax Costs, essentially repeating the arguments raised in its Objection to the Bill of Costs. Dkt. No. 150.

The court may provide *de novo* review of the clerk's actions taxing costs if requested by motion after the costs are taxed. <u>See</u> Fed. R. Civ. P. 54(d)(1); <u>Cofield v. Crumpler</u>, 179 F.R.D. 510, 514 (E.D. Va. 1998).  McAirlaids filed such a motion, and the issues have been fully briefed and are ripe for decision.[3]  For the reasons stated below, Kimberly-Clark's Bill of Costs will be approved, but for the lesser amount of $14,551.79.

## B.  Request to Stay

McAirlaids first requests that the court stay deciding the issue of the amount of costs to tax until the resolution of the pending appeal with the Fourth Circuit.  The decision lies in the sound discretion of the district court. <u>Singleton v. Dep't of Corr. Educ.</u>, No. 1:03-cv-00004, 2003 WL 22299039, at *1 -2 (W.D. Va. Oct. 3, 2003)(collecting cases). A district court may properly

---

[3] Kimberly-Clark and McAirlaids both filed multiple briefs arguing their positions with regard to taxation of costs in this case.  Kimberly-Clark asserts that McAirlaids raises new arguments in its second brief filed on this issue, and that such arguments should be waived because they were not raised in the first instance.  For the purposes of this report and recommendation, the court will consider all arguments raised in the parties' briefs addressing the taxation of costs.

defer ruling on assessment of costs until the appellate process has been completed. Reed v. Health & Human Services, 774 F.2d 1270, 1277 (4th Cir. 1985)(reversed on other grounds). However, because Rule 54(d) creates a presumption in favor of the taxation of costs, a district court must provide a valid reason not to award costs at the customary stage. Singleton, 2003 WL 22299039, at *1 -2; EEOC v. Allied Systems, Inc., No. 97-cv-1396, 1999 WL 395377, at *1 (N.D.N.Y. June 9, 1999).

 In this case, I find that it is in the interest of judicial economy to resolve the motions regarding taxation of costs immediately, so that any appeal as to the award of costs may be consolidated with the appeal on the merits. See Amdocs (Israel) Limited, v. Openet Telecom, Inc., No. 1:10-cv-910, 2013 WL 1192947, at *2 (E.D. Va. Mar. 21, 2013); Singleton, 2003 WL 22299039, at *1 ("[M]y discretion is best exercised by proceeding with a review of the taxation of costs because it would avoid piecemeal appeals. With prompt taxation, any appeal from the award of costs could feasibly be consolidated with the pending appeal on the merits, thereby enhancing judicial efficiency.").  Resolution of taxation of costs at this stage will not present a hardship on the parties, as both parties have already spent significant resources and filed multiple briefs defending their position on the issue.  Thus, I recommend that the court tax the costs of litigation against McAirlaids, but stay payment pending the resolution of the Fourth Circuit appeal.

## C.  Standard of Review

A prevailing party may recover costs, other than attorney's fees, under Fed. R. Civ. P. 54(d)(1).  The district court does not have "unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case." Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 235 (1964) overruled on other grounds by Crawford Fitting

Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987). Rather, the court may only tax those costs authorized by statute. Constantino v. American S/T Achilles, 580 F.2d 121, 123 (4th Cir. 1978); Fells v. Virginia Dept. of Transp., 605 F. Supp. 2d 740, 742 - 743 (E.D. Va. 2009). The general taxation of costs statute, 28 U.S.C. § 1920, provides six categories of costs that may be taxed: (1) clerk and marshal fees; (2) transcript fees; (3) printing and witness fees; (4) copying fees; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, interpreters, and special interpretation services. The court has wide latitude to award costs, so long as the costs are enumerated in § 1920. Centennial Broad., LLC v. Burns, Civ. Action No. 6:06-cv-006, 2007 WL 1839736, at *1 (W.D. Va. June 22, 2007). In defining the parameters of this statute, "'it is generally recognized that courts may interpret the meaning of items listed in § 1920[.]'" Fells v. Virginia Dept. of Transp., 605 F. Supp. 2d 740, 742 (E.D. Va. 2009)(citing BDT Products, Inc. v. Lexmark Intern., Inc., 405 F.3d 415, 419–20 (6th Cir. 2005)).

The prevailing party bears the initial burden of demonstrating that the requested costs are allowable under § 1920. Mayse v. Mathyas, Civ. Action No. 5:09-cv-100, 2010 WL 3783703, at *1 (W.D. Va. Sept. 38 2010). Once the prevailing party has done so, the burden shifts to the losing party to show the impropriety of taxing the proposed costs. Id.

Rule 54(d)(1) creates a presumption that the prevailing party will be awarded costs. Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999). If departing from this rule, the court must justify its decision by "articulating some good reason for doing so." Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc., 899 F.2d 291, 296 (4th Cir. 1990). Further, costs should be limited to those "reasonably necessary at the time" they were incurred. LaVay Corp. v. Dominion Fed. Sav. & Loan Assn., 830 F.2d 522, 528 (4th Cir. 1987). This standard

"will obviously involve some subjective judgment by the court," because "[l]awyers will often disagree about what is 'reasonably necessary' to prepare for a trial." Jop v. City of Hampton, Va., 163 F.R.D. 486, 488 (E.D. Va. 1995). Thus, "[t]he court must be guided by its own understanding of the necessities of legal practice, applied to the facts and circumstances of the individual case." Id.

### D. Analysis

Kimberly-Clark seeks costs in the amount of $24,183.99, broken down into the following categories: (1) reporter fees and preparation of deposition transcripts- $12,872.70; (2) fees for video copies of deposition recordings-$7,420.00; (3) fees for exemplification and copies-$2,450.40; and (4) fees for the deposition of expert witness Phillip Mango- $1,440.89. McAirlaids argues that the costs should be denied based upon Kimberly-Clark's litigation conduct and the excessiveness of the costs sought. As noted above, Rule 54(d)(1) creates a presumption that the prevailing party will be awarded costs. Kimberly-Clark is the prevailing party in this litigation, and is entitled to recover those requested costs allowable under § 1920. Alternatively, McAirlaids argues that certain costs should be disallowed, and that court should reduce the total amount of costs to $13,182.69. See Dkt. No.146, p. 6.

#### 1. Deposition Transcripts

McAirlaids argues that Kimberly-Clark should not be awarded its costs related to McAirlaids' depositions of Kimberly-Clark's witnesses (Johnston, Rooyakkers, Heiting, Coenen, Morris, Ruman, Curtin, DeGroot, Orchard, Gantz, Morris (30(b)(6))), or alternatively, that Kimberly-Clark should not recover costs for five deposition transcripts that were not cited by any party's summary judgment brief.

The costs of a deposition, including transcript fees, should be awarded "when the taking of a deposition is reasonably necessary at the time of its taking." LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n, 830 F.2d 522, 528 (4th Cir. 1987). McAirlaids argues that the depositions of Kimberly-Clark's witnesses were necessary to address the allegation that the functionality of the Kimberly-Clark product was relevant to the issue in this case, a position that Kimberly-Clark later "abandoned" in its summary judgment motion. Thus, McAirlaids argues that Kimberly-Clark should not recover costs for depositions made necessary by a position that it later discarded. Kimberly-Clark argues that its position with regard to the relevance of the functionality of its product did not waiver throughout the litigation, and that it should be reimbursed for these depositions that McAirlaids insisted upon taking.

I find that the depositions of Kimberly-Clark's witnesses were "reasonably necessary" at the time of their taking. Consistent with my findings regarding the award of attorneys' fees, both parties in this case believed, albeit to a different degree, that the use of embossed dots on Kimberly-Clark's product may have some bearing on the functionality of the embossed dot pattern on the McAirlaids' product. It is disingenuous for McAirlaids to argue the depositions of the Kimberly-Clark employees were relevant, necessary and not taken for an improper purpose to avoid the imposition of attorneys' fees, but argue that the same depositions were not "reasonably necessary at the time," to avoid the taxation of the depositions as costs. McAirlaids cannot have it both ways. Just as it was not vexatious litigation conduct for McAirlaids to pursue discovery related to Kimberly-Clark's product, I likewise find that Kimberly-Clark is entitled to recover its costs as permitted under Rule 54(d)(1) and § 1920 related to that discovery.

Additionally, whether a transcript was used in a dispositive motion is not the test of whether the costs are taxable. Ferris v. AAF-McQual, Inc., No. 5:06-cv-82, 2008 WL 495656, at

*1 (W.D. Va. Feb. 21, 2008). See also U.S. ex rel. Davis v. U.S. Training Center, Inc., 829 F. Supp. 2d 329, 339 (E.D. Va. 2011)(This objection fails, as the applicable standard for the recovery of deposition-related costs pursuant to 28 U.S.C. § 1920 is not whether a deposition is ultimately used at trial, but rather whether "the taking of a deposition is reasonably necessary *at the time of its taking*."(citation omitted)).   Thus, I find that Kimberly-Clark is entitled to recover the costs related to the seventeen deposition transcripts listed in its Bill of Costs.

## 2. Expedited Transcript Fees

McAirlaids objects to the taxation of expedited costs for the transcripts of the depositions of two of its witnesses, Maksimow (McAirlaids' owner) and Gawley (McAirlaids' President and 30(b)(6) designee), because they were taken more than a month before Kimberly-Clark filed its summary judgment brief, and thus the increased cost for expedited service was unnecessary.[4] Taxing fees for the expedited production of transcripts is "not allowed absent a showing of necessity." Nobel Biocare USA, LLC v. Technique D'usinage Sinlab, Inc., No. 1:12-cv-730, 2013 WL 819911, at *2 -3  (E.D. Va. Mar. 4, 2013); Ferris, 2008 WL 495656, at *1.

Kimberly-Clark argues that expedited production of these transcripts was necessary because the depositions were taken just a few weeks before the rebuttal expert report deadline and the close of discovery, and a little over one month before Kimberly-Clark's summary judgment brief was due.  Dkt. No. 149, p. 6.  When the court bifurcated this case into two stages, it set a compressed discovery schedule for the parties on the issue of functionality, requiring the completion of discovery on functionality in four months, with the filing of summary judgment briefs two weeks later. Dkt. No. 19-1.  Given the condensed pre-trial schedule and looming deadlines, I find reasonable justification for Kimberly-Clark to obtain expedited service of the deposition transcripts of Maksimow and Gawley.  See Mann v. Heckler & Kock Defense, Inc.,

---

[4] McAirlaids does not object to the costs for expedited transcripts of any other deposition transcripts.

No. 1:08cv611, 2011 WL 1599580 (E.D. Va. April 28, 2011)(Fees for expedited deposition transcripts are taxable where depositions occurred two or fewer weeks before summary judgment motion was due.); But see, Southprint, Inc. v. H3, Inc., No. 4:02-cv-38, 2005 WL 3177627 at * 3 (W.D. Va. Nov. 23, 2005)(Fees for "rush" or "expedited" service of process not recoverable where defendant did not provide a reasonable justification for the rush service.)

### 3. Videographer Fees

Kimberly-Clark also seeks costs for obtaining video recordings of each of the depositions taken in this case. McAirlaids argues that such costs are not recoverable because they are duplicative and were obtained simply for the convenience of Kimberly-Clark's attorneys.

Videography fees for depositions are recoverable as costs only if "necessarily obtained for use in the case." Amdocs (Israel) Limited, 2013 WL 1192947, at *3. This "concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial." Cherry v. Champion Intern. Corp., 186 F.3d 442, 449 (4th Cir. 1999). In Cherry, the court recognized that "there surely are circumstances when both a videotape and a transcript of a deposition may be necessary," but ultimately held that a defendant's assertion that a video recording might be needed for effective impeachment at trial was insufficient. 186 F.3d at 449.

In this case, Kimberly-Clark argues that they are entitled to videographer fees because some of the witnesses were outside the subpoena power of the court, and it was uncertain which witnesses would be available for trial. Kimberly-Clark also argues that McAirlaids chose to videotape many of the depositions, and thus, if Kimberly-Clark had not requested its own copies of the videos, it would have been prejudiced in its ability to prepare its case. Kimberly-Clark

further argues that McAirlaids waived any objection to these fees by not raising them when the depositions were noticed to be recorded by video. Dkt. No. 155, pp. 4-5.

I find that Kimberly-Clark has not met its burden to prove that videotapes of the depositions were necessary for use in this case. Kimberly-Clark's professed reasons for obtaining a video recording of every deposition taken in the case consists of nothing more than convenience for counsel, or duplication to assure alternative methods for presenting materials at trial. With regard to the availability of witnesses, McAirlaids claims that it assured Kimberly-Clark that deponents outside of the court's subpoena power would be made available when necessary. Dkt. No. 164, p. 3. Such an assurance is sufficient to overcome Kimberly-Clark's alleged need for videotapes. See Mann, 2011 WL 1599580, at *6 (Where Secret Service agreed to produce officer as a witness at trial, videotape of his deposition was not reasonably necessary); Nobel Biocare USA, 2013 WL 819911, at *3 (Uncertainty as to whether witnesses would be available for trial does not adequately demonstrate why deposition transcripts would not have been sufficient.)

Additionally, McAirlaids' failure to object to Kimberly-Clark's notice indicating that a deposition would be recorded both by stenographic means and by videotape is not a sufficient reason to tax the fees for videotaping depositions to McAirlaids. See Amdocs (Israel) Limited, 2013 WL 1192947, at *4. Accordingly, I find that Kimberly-Clark has not adequately demonstrated why video recordings of every deposition were "necessary for use in the case," and thus, the amount of costs should be reduced by $7,420.00.

## 4. Copies

McAirlaids objects to Kimberly-Clark's costs for providing the court with courtesy copies of motions and briefs filed under seal. The court may tax "costs for copies of

exhibits…where such copies were necessarily obtained for use in the case." Bd. of Dirs., Water's Edge v. Anden Grp., 135 F.R.D. 129, 137 (E.D. Va. 1991). "The burden is on the party seeking recovery of photocopying costs to demonstrate the reasons for each copying charge." Ford v. Zalco Realty, Inc., 708 F. Supp. 2d 558, 563 (E.D. Va. 2010). Costs for copies of documents provided to the court or opposing counsel are generally recoverable. Ford, 708 F. Supp. 2d at 563, Mann, 2011 WL 1599580, at *6; Centennial Broad, LLC, 2007 WL 1839736, at *2. However, copies made merely for counsel's convenience are ordinarily not allowed. Fells v. Virginia Dept. of Transp. 605 F. Supp. 2d 740, 743 (E.D. Va. 2009); Simmons v. O'Malley, 235 F. Supp. 2d 442, 444 (D. Md. 2002); Thomas v. Treasury Mgmt. Ass'n, Inc., 158 F.R.D. 364, 372 (D. Md. 1994).

McAirlaids argues that courtesy copies provided to the court are not "necessarily obtained" because they were not required for determination of the case. McAirlaids further argues that the need for courtesy copies was caused by Kimberly-Clark's unnecessary insistence on filing virtually all motions under seal. Alternatively, McAirlaids requests that the court reduce the copying costs to $.10 per page, the applicable fee for copies of electronic documents in the Western District of Virginia.

The parties in this case jointly requested that the court enter an agreed protective order, which required the parties to submit documents containing material designated as confidential to the court under seal. In accordance with this court's local rules, when either party requested that the court file documents under seal, that party was required to provide to the court copies of those documents. W.D. Va. Gen. R. 9. Further, pursuant to the local rules and as set forth in multiple court orders in this case, Kimberly-Clark was required to submit to the court copies of the documents to be sealed with proposed redactions clearly marked. Thus, it was reasonably

necessary for Kimberly-Clark to provide "courtesy" copies of these motions and briefs to the court, because such copies were required for the determination of the sealing motions filed in the case and the redactions approved by the court.

McAirlaids also argues that Kimberly-Clark should be limited to charging $.10 per page for its copies, rather than $.20 per page for black-and-while copies and $1.25 per page for color copies. This court has previously held that $.10 a page is a "reasonable charge" for photocopying fees. See Kelley v. Little Charlie's Auto Sales, No. 4:04-cv-83, 2006 WL 2456355, at *4 (W.D. Va. 2006); Adkins v. Crown Auto, Inc., No. 4:04-cv-42, 2005 WL 2563028, at *5-6 (W.D. Va. Oct. 11, 2005). I find no reason to deviate from those prior decisions in this case, and no reason that color versions of the courtesy copies were "necessarily obtained for use in this case." Accordingly, I recommend reducing Kimberly-Clark's copying charges to $.10 a page, or a total of $238.20.

### 5. Witness Fees

McAirlaids argues that Kimberly-Clark is not entitled to be reimbursed for the airfare of its expert witness, Phillip Mango, to travel to Chicago for his deposition, because the deposition "could have been taken in a closer location."[5] In support of this assertion, McAirlaids attaches an email from counsel for McAirlaids to counsel for Kimberly-Clark, offering a "free ride from Roanoke to Charlotte to minimize [Kimberly-Clark's] costs and logistics associated with the expert depositions." Dkt. No. 146-2.

The travel costs of Kimberly-Clark's expert witness are properly taxable under § 1920, and thus, a presumption arises that Kimberly-Clark is entitled to recover this cost. McAirlaids' assertion that the deposition could have been taken in a less costly location, and email offer to

---

[5] McAirlaids does not object to the costs associated with Mr. Mango's accommodation for the deposition. Dkt. No. 146, p. 6.

give Kimberly-Clark's counsel a "free ride" is insufficient to overcome the presumption. As Kimberly-Clark notes in its opposition brief, the travel of Kimberly-Clark's attorneys to North Carolina may have been more expensive than the cost of flying Mr. Mango to Chicago. Thus, I find that this cost is appropriately taxed under § 1920.

## V. CONCLUSION

For the reasons set forth above, I hereby **RECOMMEND** that Kimberly-Clark's Motion for Attorneys' Fees (Dkt. No. 139) be **DENIED**, Kimberly-Clark's Bill of Costs be **GRANTED**, but in the reduced amount of $14,551.79. The calculation of the costs awarded is as follows:

| Cost | Kimberly-Clark Request | Amount Awarded |
| --- | --- | --- |
| Deposition Transcripts | $12,872.70 | $12,872.70 |
| Video Recording Fees | $ 7,420.00 | $ 0.00 |
| Photocopies | $ 2,450.40 | $ 238.20 |
| Witness Fees | $ 1,440.89 | $ 1,440.89 |
| **TOTAL** | **$24,183.99** | **$14,551.79** |

The Court further recommends that payment of the awarded costs be **STAYED** until the resolution of McAirlaids' pending appeal of this case in the Fourth Circuit.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file

specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter:  January 14, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge